UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

-vs-                                   Case No.  5:04-cv-442-Oc-10GRJ

ROSE CHARBONEAU,

                Defendant.

_____

## O R D E R

This is an action by the United States of America, pursuant to 26 U.S.C. § 7401, to reduce to judgment the outstanding federal tax assessments made against Defendant Rose Charboneau for the tax years ending 1987, 1990, 1991, and 1992 and also for an order directing the Defendant to vacate certain premises currently titled to the United States.  The case is currently before the Court for consideration of the United States' Motion for Summary Judgment (Doc. 46).  The Defendant, proceeding *pro se,* has filed a combined Memorandum in Opposition, Motion to Strike, and Counter-Motion for Summary Judgment (Doc. 49), to which the United States has responded (Doc. 50).  Defendant has also filed, without permission from the Court, a reply brief (Doc. 51) in support of her motion and counter-motion.  Having considered the arguments of both parties, and for the reasons set forth below, the United State's Motion for Summary Judgment is due to be denied and the Defendant's Motion to Strike and Counter-Motion for Summary Judgment are due to be denied.

**Factual Background**

Ms. Charboneau did not file any income tax returns for tax years 1987, 1990, 1991, and 1992. As a result, on October 17, 1994, the Internal Revenue Service ("IRS") assessed its tax liabilities against Ms. Charboneau for her unpaid federal income taxes, penalties, and interests for those years.[1] At the time the assessments were made, statutory liens arose in favor of the United States and attached to all of Ms. Charboneau's property rights, both real and personal. See 26 U.S.C. § § 6321, 6322. On February 6, 1995, the IRS filed a Notice of Federal tax Lien for the years at issue.[2]

Pursuant to these statutory liens, an agent from the IRS executed a Notice of Levy for Ms. Charboneau's real property located in Ocala, Florida on November 7, 1994. The Notice was sent to Ms. Charboneau via certified mail. A second Notice of Levy was sent to Ms. Charboneau via certified mail on January 3, 1995, and a third on June 29, 1995.[3] Each of these Notices informed Ms. Charboneau that if she did not satisfy her tax liabilities, that a levy would issue against her property. Ms. Charboneau did not respond to these Notices and did not satisfy her tax liabilities. As a result, on August 14, 1995 and

---

[1]See Ex. 1 to United States' Motion for Summary Judgment. The IRS had previously made tax assessments against Ms. Charboneau for the 1982 tax year, which were satisfied by the sale of the land at issue in this case.

[2]See Ex. 2 to United States' Motion for Summary Judgment.

[3]See Declaration of Dave Quinn, attached as Ex. 3 to United States' Motion for Summary Judgment ("Quinn Declaration").

August 31, 1995, the IRS prepared Notices of Levy and Seizure of Ms. Charboneau's real property, located at 284 N.W. 117th Court, Ocala, Florida 34482.[4]

An IRS agent attempted to personally deliver the Notices of Seizure and Levy to Ms. Charboneau on September 1, 1995. Because she was not at her home, the agent left the Notices at her residence.[5] Ten days after leaving the Notices at Ms. Charboneau's home, the IRS agent mailed her a Notice of Sale, which informed Ms. Charboneau that the sale of her real property was to take place on Friday, September 29, 1995, at 2 p.m., at the IRS offices in Ocala, Florida.[6] The IRS advertised the sale in the Ocala Star Banner on September 17, 1995.[7] On September 26, 1995, Ms. Charboneau filed a Notice of Lis Pendens acknowledging the upcoming sale and seeking a cease and desist order against the same.[8]

The sale of Ms. Charboneau's property took place on September 29, 1995. Because the sale generated no third-party bids, the IRS declared the seized property sold to the United States in the amount of $14,915.70, and credited that amount towards

---

[4]Quinn Declaration, Exs. D, E.

[5]Quinn Declaration, ¶ 7. See also 26 U.S.C. § 6335(a).

[6]Quinn Declaration, ¶ 8. While the United States has not proffered any evidence demonstrating Ms. Charboneau's actual receipt of the Notice, it is clear that she was aware of the Notice, and of the sale, well before its scheduled date.

[7]Quinn Declaration, ¶ 9, Ex. G.

[8]Quinn Declaration, ¶ 10, Ex. H.

3

payment of Ms. Charboneau's 1982 tax liability.[9]  A Deed of Real Estate was executed and recorded on April 10, 1996, transferring title of the real property to the United States.[10]

Since the sale, the United States has made repeated demands for Ms. Charboneau to vacate the property, but she has steadfastly refused to comply.  Instead, Ms. Charboneau filed in the public records a Designation of Homestead on February 20, 1996, and on February 25, 1997 filed a Notice of Fraudulent Transfer.[11]  The Defendant remains indebted to the United States in an amount exceeding $37,000.00, plus interest, which continues to accrue.[12]

## Procedural History

The United States initiated this action on October 4, 2004, through the filing of a complaint seeking to reduce its tax assessments to a judgment against Ms. Charboneau in the amount of $37,952.10 plus interest (Doc. 1).  The United States amended its complaint on January 7, 2005, (Doc. 8) to include a second count seeking an order directing Ms. Charboneau to vacate the real property located at 284 N.W. 117th Court, Ocala, Florida, which is now owned by the United States, in partial satisfaction of her tax liabilities.  The United States also seeks an order adjudicating that it is the full and rightful

---

[9]  Quinn Declaration, ¶ 12.

[10]  Quinn Declaration, ¶ 13, Ex. I.

[11]  See Exs. 4, 5 to United States' Motion for Summary Judgment.

[12]This amount represents Ms. Charboneau's tax liabilities for the years 1987, 1990, 1991, and 1992.  The 1982 tax assessment was satisfied with the proceeds from the sale of Ms. Charboneau's real property.

owner of the real property, free from any encumbrances, and that a judgment be entered against Ms. Charboneau for the reasonable rental value of the property, based on her continued occupation and use of the property since April 1996.

Ms. Charboneau filed a counter-claim pursuant to 26 U.S.C. § 7433 for damages allegedly caused by the actions of an agent of the IRS (Doc. 3), and moved to dismiss the United States' Complaint (Doc. 11). The Court dismissed the counterclaim and denied the motion to dismiss on February 7, 2005 (Doc. 20). Since that time, Ms. Charboneau has filed numerous other motions to dismiss (Docs. 23, 25, 32, 35), none of which had any merit, and all of which were denied (Docs. 31, 45).

The United States filed the instant Motion for Summary Judgment on June 13, 2005 (Doc. 46). Ms. Charboneau filed her brief in opposition, motion to strike, and counter-motion for summary judgment on June 24, 2005 (Doc. 49). Both motions became ripe for review on July 12, 2005.

<u>**Summary Judgment Standard**</u>

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." <u>Samples on Behalf of</u>

Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in

Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of

establishing the nonexistence of a triable issue of fact.  If the movant is successful on this

score, the burden of production shifts to the non-moving party who must then come forward

with "sufficient evidence of every element that he or she must prove."  Rollins v.

Techsouth, 833 F.2d 1525, 1528 (11th Cir.  1987).  The non-moving party may not simply

rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or

other admissible evidence to demonstrate that a material fact issue remains to be tried.

## Discussion

**A.    Defendant's Tax Assessments**

The United States first requests that the Court reduce to a judgment the tax

assessments against Ms.  Charboneau for the tax years 1987, 1990, 1991, and 1992.  A

tax assessment is an administrative determination by the IRS of a tax liability, and it is the

first necessary step towards attempting to collect on that liability.  See 26 U.S.C. § 6213(a).

The purpose of an assessment is "to insure that a proper record is kept in order to avoid

slipshod tax accounting practices and to insure that taxpayers may receive a summary of

tax records pertaining to their tax liability." Gentry v.  United States, 962 F.2d 555, 556 (5th

Cir.  1992).

The IRS effectuates a tax assessment by following certain recording procedures,

which are set forth in 26 U.S.C. § 6203 of the Internal Revenue Code and 26 C.F.R. §

301.6203-1.  Together, these provisions state that an assessment "shall be made by an assessment officer signing the summary record of assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment."  26 C.F.R. § 301.6203-1.  The regulations further provide that if a taxpayer requests a copy of the record of assessment, the taxpayer "shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed."  Id.

In practice, the IRS complies with these procedures by having an assessment officer fill out and sign the "summary record of assessment," also known as a Form 23C.   In this case, the government did not provide the Court with an actual Form 23C, but it did submit several Transcripts of Account for each tax year at issue, which were signed and certified by an officer of the IRS.  The Transcripts of Account identify Ms.  Charboneau by name, address and social security number, specify that the tax liability pertains to a "Form 1040" - i.e. federal income tax payments, identify each tax year for which a liability has been assessed, and provide the date and amount of each assessment, payment, credit, penalty and accrued interest.[13]   In other words, these Transcripts of Account satisfy the requirements of both 26 U.S.C. § 6203 and 26 C.F.R. § 301.6203-1.

---

[13] See Ex.  1, United States Motion for Summary Judgment.

7

Ms. Charboneau does not contest the IRS' assessments against her in her opposition to the United States' summary judgment motion.  However, in her answer to the amended complaint, she raises several challenges to these assessments, each of which will be addressed here.[14]   First, Ms. Charboneau claims that the assessments made against her were not timely.  However, she provides no support for her timeliness claim, and it is clear from the documents provided by the United States that each assessment was made within the time constraints set forth by IRS regulations.  See 26 C.F.R. § 301.6501(a)-1 (assessments may be made within 3 years after return is filed); 26 C.F.R. § 301.6501(c)-1 (where no return filed, 3 year period begins to run from date prescribed for filing the return).[15]

Ms. Charboneau further asserts that the assessments were not valid because they do not include the following documents: a "Taxpayer Delinquency Account," a "Summary Record of Assessment on Form 23C," and a "90-Day Statutory Notice of Deficiency."  With respect to the first two documents mentioned, Ms. Charboneau has provided no authority

---

[14]When ruling on a motion for summary judgment, the Court must consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c); Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[15]According to the Transcripts submitted by the Government, Ms. Charboneau's income tax returns were due on or before January 10, 1994 for each of the tax years in question. Although it is not clear why Ms. Charboneau would have been afforded such a lengthy period of time to file her tax returns from the years 1987 through 1992, she has provided no evidence or argument challenging this determination.  And, as the Transcripts clearly indicate, the assessments were all made within the applicable three year limitations period.  See Ex. 1 to United States' Motion for Summary Judgment.

for this argument, and the Court has been unable to find any support for her claim that such documents are required in order to create a valid tax assessment under 26 U.S.C. § 6203. Rather, in order to have a valid assessment, the documentation provided by the IRS need only state the taxpayer's identity, the character of the liability assessed, the taxable period, and the date and amount of the assessment. See 26 C.F.R. § 301.6203-1; United States v. Chila, 871 F.2d 1015, 1018 (11th Cir. 1989). This information is clearly set forth in the Transcripts attached to the Government's Summary Judgment Motion. See Ex. 1. These Transcripts are authenticated and signed by an officer of the IRS, who certifies that the Transcripts are a "true literal Transcript of Account showing assessments and payments" for Ms. Charboneau for each relevant tax year, and identifies Ms. Charboneau both by name and by social security number. Id. This is all that is required by the statute and regulations; there is no requirement that the information be provided on any specific type of form. See United States v. Dixon, 672 F. Supp. 503 (M.D. Ala. 1987), per curiam aff'd, 849 F.2d 1478 (11th Cir. 1988) (absence of Form 23C does not invalidate assessment where IRS officer provides signed Certificate of Assessments and Payments certifying that it is a true transcript of all assessments, penalties, interest, and payments on record for taxpayer, and where transcript clearly sets forth assessment dates); see also Gentry, 962 F.2d at 557 (lengthy certificate that identifies taxpayer by name, address and social security number, and provides record of all tax returns, payments, credits, and assessments satisfies 26 U.S.C. § 6203). Moreover, a "summary record of assessment" need only be provided to the taxpayer upon the taxpayer's request - and Ms. Charboneau

has provided no evidence that she ever made such a request.  Thus, to the extent her argument is based on the fact that she never received such documentation, it is without merit.

Ms.  Charboneau's claim that she never received a Notice of Deficiency is more troublesome.  26 U.S.C. § 6212(a) provides that "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed . . . he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail."  A Notice of Deficiency must be mailed *before* an assessment and/or any subsequent levy or lien on property may be made.  26 U.S.C. § 6213(a).  Simply put, the Notice serves as a prerequisite to a valid assessment by the IRS.  Robinson v.  United States, 920 F.2d 1157, 1158 (3d Cir.  1990).  In the present case, Ms.  Charboneau states, both in her answer and in an "Administrative Declaration" attached to her answer, that she never received a Notice of Deficiency.  Ms.  Charboneau has also produced what purports to be a computer print-out of the contents of her "master file" with the IRS.  This print-out does not indicate that a Notice of Deficiency was ever sent to Ms.  Charboneau.

The fact that Ms.  Charboneau may never have received such a notice is not fatal to the United States' claims; rather, all that need be proved is that the IRS in fact mailed such a notice(s) for each deficiency at issue to Ms. Charboneau at her last known address.  Dixon, 672 F.  Supp.  at 506.  And proof of mailing can be demonstrated simply by providing the Form 23C, or a Certificate of Assessment (otherwise known as Form 4030),

which indicates the date the Notice was sent, or some other documentary evidence demonstrating mailing. Id. Unfortunately, the United States has never responded to this argument, and has provided no evidence that any such Notice was ever mailed to Ms. Charboneau prior to making their tax assessments against her - despite the fact that it is a precondition to assessment.[16]  As a result, the Court must find that the United States has not yet met its burden of proof to establish that the tax assessments are valid and should be reduced to judgment.  Without proof that the IRS sent Notice(s) of Deficiency to Ms. Charboneau at least 90 days prior to the date the agency made its tax assessments against her, the Court cannot find the assessments valid.  See 26 U.S.C. § 6213(a);

---

[16]While the Government is correct that a Certificate of Assessment, or Form 4030, may be used as a substitute for a "summary record of assessment" and serve as presumptive proof that tax assessments are in all respects proper, the documents submitted by the Government in this case are not the traditional Certificate of Assessment. To be sure, the certified Transcripts provide the information required by 26 U.S.C. § 6302 and 26 C.F.R. § 301.6203-1, but they do not provide *any* of the dates that any notices were provided to Ms.  Charboneau - and in particular do not indicate that any Notice of Deficiency was ever sent as required by 26 U.S.C. § 6213(a).  If the documents submitted by the Government had provided such information, or if they were the official Form 4340 Certificates of Assessment, the Court would have been inclined to grant summary judgment. Cf Geiselman v.  United States, 961 F.2d 1, 6 (1st Cir.  1991) ("The Certificates of Assessments and Payments, which listed 'First Notice' dates for each assessment, also constituted presumptive proof that the IRS gave notice of the assessments and made demands for payment"); Bassett v.  United States, 782 F.Supp.  113, 117   (M.D. Ga. 1992 ) (finding that certificates of assessment are presumptive proof that assessments are valid, even without copy of Notice of Deficiency where certificates provide dates that first and second notices were issued); United States v.  Rempel, 202 F.Supp.  2d 1051 (D.  Alaska 2001) (Form 4340 certificates of tax assessment are official documents which establish that assessments were made and that assessments made were valid, and when same certificates indicate that Internal Revenue Service (IRS) sent taxpayers notice of assessment and demand for payment on certain date, certificates also establish that notice was indeed sent).

Singleton v. United States, 128 F.3d 833 (4th Cir. 1997).  Thus, the United States' motion for summary judgment is due to be denied as to Count I of the amended complaint.[17]

## B.    The Seizure of Ms. Charboneau's Real Property

Because the United States' has not yet established the validity of its assessments against Ms. Charboneau, the Court finds that the United States also cannot - at this time - meet its burden with respect to the validity of its liens and subsequent seizure and sale of Ms. Charboneau's real property in Ocala, Florida.  Therefore, the United States' motion for summary judgment must also be denied as to Count II.

## C.    Ms. Charboneau's Motion to Strike and Cross-Motion for Summary Judgment

Along with her opposition to the United States' Motion for Summary Judgment, Ms. Charboneau has filed a Motion to Strike most, if not all of the exhibits attached to the United States' motion, as well as a Counter-Motion for Summary Judgment.  Both motions are due to be denied.

Ms. Charboneau's Motion to Strike is based on her assertion that the United States' exhibits have not been authenticated, and are not "trustworthy."  Ms. Charboneau first refers the Court to Rule 901(a) of the Federal Rules of Evidence, which sets forth the requirement that evidence must be authenticated in order to be admissible.  However, as the United States correctly states in its response to this motion, each of the exhibits submitted by the United States have been authenticated, or are self-authenticating.

---

[17]The Court is not saying that such notices have not been sent to Ms. Charboneau, only that the Government has not yet provided any evidence on this issue.

Specifically, each of the exhibits attached to David Quinn's declaration are identified and authenticated by Mr. Quinn in his declaration, as required by Rule 901(b)(1). Exhibits 1 (the Certificates of Assessment Transcript) and 6 (transcript excerpts of Ms. Charboneau's deposition) to the United States' motion are authenticated under Rule 902(8) as they are accompanied by certificates of acknowledgment. Exhibits 2, 4, and 5 are public records, and therefore are authentic under Rule 901(b)(7).[18]

Ms. Charboneau's reliance on a 1996 report by the United States' General Accounting Office which she claims demonstrates that "in an era from the late 1960's through 1994 [the IRS] **had no trustworthy records**" is equally spurious.[19] This report merely discusses the efforts of the IRS to modernize its financial record-keeping systems. While it does discuss discrepancies in the IRS's record keeping systems, it in no way, shape, or form states that the IRS's records are not trustworthy - the report does not even mention Notices of Levy or Seizure, Notices of Sale, Lien Notices, or Tax Assessment documents. More importantly, the report does not speak whatsoever towards the tax assessments at issue in this litigation. Therefore, Ms. Charboneau's motion to strike must fail.

---

[18]Ms. Charboneau's claim that the Quinn Declaration should also be stricken is equally frivolous. First, the declaration is, in fact, electronically signed, as required by this Court's electronic filing and case management procedures. Second, a declaration need not be notarized to be valid. See 28 U.S.C. § 1746. Third, the declaration states that Mr. Quinn was the IRS agent in charge of collecting on Ms. Charboneau's tax liabilities and that he had first hand knowledge of her case - Ms. Charboneau has not provided any evidence to refute this.

[19] See Ms. Charboneau's Opposition Brief (Doc. 49), at 3 (emphasis in original).

Ms. Charboneau's counter-motion for summary judgment is also due to be denied. It appears that this motion is based, yet again, on her implausible claims that the documents proffered by the United States are not trustworthy. She also asserts that the documents provided by the United States do not identify whether her tax liabilities are the result of a "custom, duty, import, or excise" tax. Opp. Brief at 4. Not only is such an argument ludicrous, it is not accurate. It is clear from the documents submitted to this Court and provided to Ms. Charboneau that the United States has attempted to assess tax liabilities against Ms. Charboneau for unpaid income taxes.[20]

## CONCLUSION

Accordingly, for the reasons set forth above it is hereby ORDERED that:

1.     The United States' Motion for Summary Judgment (Doc. 46) is DENIED WITHOUT PREJUDICE. The United States shall have ten (10) days from the date of this Order to file an amended Motion for Summary Judgment to include evidence relating to the question of whether the IRS ever sent Ms. Charboneau a Notice of Deficiency for each relevant tax year as required by 26 U.S.C. § 6213(a).

2.     Defendant's combined Memorandum in Opposition, Motion to Strike, and Counter-Motion for Summary Judgment (Doc. 49) is DENIED.

---

[20] See Exs. 1, 2 (both of which clearly indicate that the type of tax liability at issue is a "1040" tax - i.e. federal income tax).

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of September, 2005.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Rose Charboneau, *pro se*
             Maurya McSheehy