UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2005 OCT 17 AM 11:08

CLERK, US DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>v. )<br>)<br>Rose Charboneau )<br>)<br>Defendant, )<br>)<br>)<br>)<br>) | Civil No. 5:04-cv-0442-WTH-GRJ<br><br><br><br><br><br><br><br>Defendant's Opposition to Plaintiff's<br>Amended Motion for Summary Judgment<br>Affidavit of Rose Charboneau<br>Verification of Rose Charboneau |

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

Defendant asks the court to deny plaintiff's motion for final summary judgment.

A. Introduction

1. Plaintiff is United States of America; defendant is Rose Charboneau.

2. Plaintiff sued defendant "to reduce to judgment the outstanding assessments made against Defendant for the tax years 1987, 1990, 1991, and 1992 and also for an order directing the Defendant to vacate certain premises currently titled to the United States".

3. On September 26, 2005 defendant filed her First Amended Answer to First Amended Complaint, Affirmative Defenses, Counterclaim for Quiet Title, Affidavit, Exhibits, and Memorandum of Law.

4. Plaintiff did not answer defendant's Counterclaim for Quiet Title. Instead, on October 7, 2005, plaintiff moved the court to strike defendant's First Amended Answer on the basis that defendant did not first seek leave of court or opposing counsel's consent before filing her First Amended Answer.

5. Also on October 7, 2005, plaintiff filed its Amended Motion for Summary Judgment.

6.     On October 14, 2005 defendant filed her motion for leave to file amended pleading, and attached Defendant's Amended Answer to First Amended Complaint, Affirmative Defenses, Counterclaim for Quiet Title, Affidavit, Exhibits, and Memorandum of Law.

7.     Plaintiff has not answered defendant's Counterclaim for Quiet Title.

8.     Defendant is awaiting plaintiff's answer to defendant's counterclaim, so that justice may be done.

9.     Summary judgment is improper in this case because there are genuine issues of fact raised in defendant's Amended Answer and Counterclaim for Quiet Title, as supported by defendant's affidavit and documentary evidence. Exhibit A, defendant's 1040 tax returns for the years 1987, 1990, 1991 and 1992, prove that the IRS administrative record which plaintiff's claims are based upon, was in error, and that plaintiff's claims are based upon false premises.

### B. Statement of Facts

The following statements of material fact are in controversy until plaintiff answers defendant's counterclaim, admitting or denying each allegation:

1.     On October 14, 2005 defendant, Rose Charboneau, filed her counterclaim for quiet title under authority of 28 U.S. C. 2409(a), and alleged as follows:

2.     Plaintiff, United States of America, has a putative claim to property rightfully belonging to Rose Charboneau.

3.     The property in question is legally described as:

COTTON WOOD TRACT 28

Commence at the NW corner of SW ¼ of Section 16, Township 15 South, Range 20 East, Marion County, Florida, thence S. 0°26'48" W. along the West boundary of said SW ¼ 65.00 feet, to the Point of Beginning, thence S 89°13'19" E. 562.06 feet, thence S 0°25'22" W. 187.77 feet, thence S. 89°13'19" E. 696.02 feet, to the West right-of line of NW 117th Court, thence S. 0°25'22" W. along said West right-of-way line 20.00 feet, thence N. 89°13'19" W. 1258.09 feet, to the West boundary of said SW ¼, thence N. 0°26'48" E. along said West boundary 207.77 feet to the Point of Beginning.

4.     Plaintiff's putative claim is based upon the writings of Van O'Neal, Dale Hart and Dave Quinn, and the underlying IRS administrative record that asserted defendant had an income tax liability for the years 1982, 1987, 1990, 1991 and 1992.

2

5. The writings of Van O'Neal, Dale Hart and Dave Quinn were based upon the same IRS administrative record that asserted defendant had an income tax liability for the years 1982, 1987, 1990, 1991 and 1992.

6. Defendant worked for Happy Valley Farm during the years 1982 and 1987.

7. Defendant worked for Regis Salon during the years 1990 and 1991.

8. Defendant worked for Hair Pros, Inc. and/or Hair Pros of Ocala during the years 1991 and 1992.

9. The IRS administrative record agrees that defendant worked for Happy Valley Farm during the years 1982 and 1987; Regis Salon during the years 1990 and 1991; and Hair Pros, Inc. and/or Hair Pros of Ocala during the years 1991 and 1992.

10. Happy Valley Farm, Regis Salon, Hair Pros, Inc. and Hair Pros of Ocala are private sector companies.

11. The IRS relied upon the receipt of the Form(s) W-2 issued by Happy Valley Farm and Regis Salon about defendant, as a basis for probable cause to investigate defendant to determine if defendant had a federal tax liability.

12. The IRS relied upon the receipt of the Form(s) 1099 issued by Hair Pros, Inc. and Hair Pros of Ocala about defendant, as a basis for probable cause to investigate defendant to determine if defendant had a federal tax liability.

13. The purpose of the Form W-2 is to record and report payments made to federal workers.

14. Van O'Neal, Dale Hart and Dave Quinn knew or should have known that the purpose of the Form W-2 is to record and report payments made to federal workers.

15. The purpose of the Form 1099 is to record and report payments made to federal self-employed workers or contractors.

16. Van O'Neal, Dale Hart and Dave Quinn knew or should have known that the purpose of the Form 1099 is to record and report payments made to federal self-employed workers or contractors.

17. Defendant did not work for the federal government during the tax years 1982, 1987, 1990, 1991 and 1992.

18. Van O'Neal, Dale Hart and Dave Quinn did not have probable cause to believe that defendant was a federal worker during the tax years 1982, 1987, 1990, 1991 and 1992.

19. Defendant did not receive any federally connected compensation for her private sector activities during the tax years 1982, 1987, 1990, 1991 and 1992.

20. Van O'Neal, Dale Hart and Dave Quinn did not have probable cause to believe that defendant received federally connected compensation for her private sector activities during the tax years 1982, 1987, 1990, 1991 and 1992.

21. Defendant is not a citizen or resident of the District of Columbia or its possessions, and has not elected to be treated as such.

22. Van O'Neal, Dale Hart and Dave Quinn did not have probable cause to believe that defendant was a citizen or resident of the District of Columbia or its possessions, or had elected to be treated as such.

23. IRS browbeat or fooled the private sector companies that defendant worked for into issuing the Forms W-2 and 1099 about defendant.

24. The IRS did not inform defendant or the companies that defendant worked for of the true nature of the Forms W-2 and 1099.

25. The creation of these Forms W-2 and 1099 about defendant constituted legal declarations that defendant is a federal worker and had been paid taxable federal compensation.

26. The IRS willingly, knowingly and intentionally relied upon these erroneous Forms W-2 and 1099 as a basis to make a determination that defendant was engaged in a revenue taxable activity.

27. Van O'Neal and the IRS intentionally relied upon these erroneous Forms W-2 and 1099 as a basis to fabricate tax assessments against defendant.

28. Van O'Neal and the IRS used the tax assessments that it made against defendant as evidence of an income tax liability due and owing the United States Treasury.

29. When defendant objected to these tax assessments, and demanded to know the legal and corresponding factual basis for the assessments, Van O'Neal, Dale Hart, Dave Quinn and the IRS refused to answer defendant's questions.

30. Van O'Neal, Dave Quinn and the IRS proceeded with collection activities against defendant by placing a fraudulent tax lien upon defendant's property.

31. Van O'Neal, Dave Quinn and the IRS proceeded with collection activities against defendant by placing a fraudulent tax levy upon defendant's property.

32. Van O'Neal, Dave Quinn and the IRS acted under color of statute to hold a lien sale of defendant's property without any judicial process.

33. Van O'Neal and the IRS quitclaimed title to defendant's real property to the UNITED STATES OF AMERICA without any judicial process.

34. The UNITED STATES OF AMERICA is in possession of stolen title to real property rightfully belonging to defendant.

35. The UNITED STATES OF AMERICA is tresspassing on title to real property rightfully belonging to defendant.

36. The tresspass by the UNITED STATES OF AMERICA on title to real property rightfully belonging to defendant has damaged defendant by preventing her from obtaining financing to build a home on her property, or otherwise develop the property.

37. In May 2005 defendant learned specifically how and why the IRS administrative record pertaining to defendant was incorrect, and for the first time learned how to administratively correct the errors.

38. On June 10, 2005 defendant did her part to correct the erroneous IRS administrative record by filing 1040 tax returns for the years 1982, 1987, 1990, 1991 and 1992, with attached supporting documentation verifying defendant did not have any taxable income or resultant tax liability.

39. Plaintiff has a duty to do its part to correct the erroneous IRS administrative record pertaining to defendant.

40. Plaintiff has a duty to grant defendant her administrative remedy in this matter.

### C. Standard of Review

Although summary judgment is proper in a case where there is no genuine issue of material fact, this is not a case in which the court should grant summary judgment. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A plaintiff moving for summary judgment must satisfy its burden by submitting summary judgment proof that establishes all elements of its cause of action as a matter of law. *San Pedro v. U.S.*, 79 F.3d 1065, 1068 (11th Cir. 1996). This burden is satisfied only if, after viewing the evidence in the light most favorable to defendant, no genuine issues of material fact exist and no reasonable trier of fact could find in favor of defendant. *Id.*

### D. Argument

Plaintiff must prove the following essential elements to sustain a claim for outstanding assessments made against defendant for the tax years 1987, 1990, 1991, and 1992, and also for an order directing the defendant to vacate certain premises currently titled to the United States:

(1) That during the tax years 1987, 1990, 1991, and 1992, defendant was engaged in a revenue taxable activity, which is defined in the IRC as the subject of a federal tax.

(2) That during these years defendant had a meaningful gain or profit, which was derived from the federally taxable or regulated activity.

(3) That the gain or profit was of sufficient amount for defendant to incur a tax liability due and owing the United States Treasury.

(4) That the real property at issue rightfully belongs to the United States, and not to defendant.

Because there is a material fact issue on each of these elements, plaintiff is not entitled to summary judgment in this case. Let us start with the element of revenue taxable activity:

Plaintiff has alleged through its Exhibit 2, page 9 of 20, entitled " Rose Charboneau, STATUTORY NOTICE EXPLANATION OF ITEMS", that defendant received **"Wage Income"** or **"Self-Employment Income"** during the "Year Ended" 1987, 1990, 1991 and 1992. Income Reconstructed Using Bureau of Labor Statistics is listed in the explanation of items, but this item ultimately refers to "Wage Income" or "Self-Employment Income" for these years.

It appears that the total extent of plaintiff's allegations of unpaid income tax liabilities assessed against defendant consist of only "Wage Income" and "Self-Employment Income".

### "Wage Income"

In order to determine if defendant received **"Wage Income"** during any of these years, and an ensuing federal tax liability imposed by Subtitle A, we go to Subtitle C, CHAPTER 24—COLLECTION OF INCOME TAX AT SOURCE ON WAGES, for the definitions of "wages" and "employee", which are defined at section 3401:

> Section 3401. - Definitions
> (a) **Wages**
> For purposes of this chapter, the term "**wages**" means all remuneration (other than fees paid to a public official) for services performed by an **employee** for his employer,...
> c) **Employee**

6

For purposes of this chapter, the term "employee" **includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing. The term "employee" also includes an officer of a [federal] corporation.**

Pursuant to the definitions of "wages" and "employee" found at section 3401, the category of individuals who are subject to the "income" tax on the "source", "wages", imposed by Subtitle A, are federal workers. Defendant was not a federal worker during the tax years 1987, 1990, 1991, and 1992.

### Conclusion regarding "Wage Income"

Pursuant to the definitions of "wages" and "employee" found at section 3401, and the material fact that defendant has never been a federal worker, defendant did not have "Wage Income" during the tax years 1987, 1990, 1991, and 1992.

### "Self-Employment Income"

In order to determine if defendant received **"Self-Employment Income"** during any of the years at issue, and an ensuing federal tax liability imposed by Subtitle A, we first go to the section of code which imposes a "self-employment tax", and then go to the sections of code which define the terms used to explain the meaning and scope of "Self-Employment Income".

Here is the statutory language concerning "self-employment income", upon which the code imposes a "self-employment tax":

[Chapter 2]
Section 1401. - Rate of tax
(a) Old-age, survivors, and disability insurance
In addition to other taxes, there shall be imposed for each taxable year, on the **self-employment income** of every individual, a tax equal to the following percent of the amount of the **self-employment income** for such taxable year:...

Section 1402. - Definitions
(a) Net earnings from self-employment
The term **"net earnings from self-employment"** means the gross income derived by an individual from any **trade or business** carried on by such individual, less the deductions allowed by this subtitle which are attributable to such **trade or business**,...
(b) **Self-employment income**
The term **"self-employment income"** means the **net earnings from self-employment** derived by an individual...

7

> Section 7701. - Definitions
> (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
>     (26) **Trade or business**
>     The term **"trade or business" includes the performance of the functions of a public office.**

Pursuant to these definitions, "net earnings from self-employment" refers to receipts derived from operating as a "trade or business", which means "the performance of the functions of a public office".

Look at the basic statutory obligation upon clients to distribute a '1099', notice of "income" paid, with which anyone who works for himself or herself is so well acquainted:

> Section 6041. - Information at source
> (a) Payments of $600 or more
> All persons engaged in a **trade or business** and making payment in the course of such **trade or business** to another person, of rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable **gains, profits, and income**… …or $600 or more… shall render a true and accurate return…

and:

> Section 6041A. - Returns regarding payments of remuneration for services and direct sales
> (a) Returns regarding remuneration for services
> If—
> (1) any service-recipient engaged in a **trade or business** pays in the course of such **trade or business** during any calendar year remuneration to any **person** for services performed by such **person**, and
> (2) the aggregate of such remuneration paid to such **person** during such calendar year is $600 or more,
> then the service-recipient shall make a return…

The instructions accompanying the forms themselves are even more explicit:

> **Trade or business reporting only.** Report on Form 1099-MISC **only** when payments are made in the course of your **trade or business**.

Further down the section is the definition of **"person"** in section 6041A(a)(1) and (2) quoted above:

> (d) Applications to governmental units
>     (1) Treated as persons
>     The term **"person" includes any governmental unit (and any agency or instrumentality thereof).**

8

### Conclusion regarding Self-Employment Income

There is no reasonable explanation for the particular use of the term "trade or business" in the language above except to invoke the custom, narrow legal definition in 7701(a)(26). If these sections were able to embrace anyone not involved in "the performance of the functions of a public office" they would simply say "any person making a payment of other than personal funds amounting to $600 or more shall...".

It is clear that unless one's work involves the performance of the functions of a public office one has no "net earnings from self-employment" and need file no return regarding the proceeds of self-employment; and no private-sector person or company should ever issue a 1099 MISC.

Pursuant to the definitions of "self-employment income" and "net earnings from self-employment" found at section 1402, and the definition of "trade or business" found at section 7701, and the definition of "person" found at section 6041, and the material fact that defendant's work has never involved the performance of the functions of a public office, defendant did not have "Self-Employment Income" during the tax years 1987, 1990, 1991, and 1992.

### Conclusion regarding the essential elements that plaintiff must prove to sustain plaintiff's claims against defendant

Because the material facts regarding defendant's activities show that defendant did not have any "Wage Income" or "Self-Employment Income" for the tax years 1987, 1990, 1991, and 1992, and plaintiff has not alleged any other revenue taxable activities as the basis for plaintiff's claim for outstanding assessments made against defendant for the tax years 1987, 1990, 1991, and 1992, plaintiff has not proven the essential elements necessary to sustain any of plaintiff's claims. Plaintiff cannot properly seek an order directing the defendant to vacate the real estate at issue in this case because without a bona fide unpaid income tax liability, the United States does not have any legal or factual basis for a claim to the property rightfully belonging to defendant.

Because there is a material fact issue on the element of income tax liability, plaintiff is not entitled to summary judgment in this case.

### E. Objections

The court should deny plaintiff's motion for summary judgment because plaintiff has not answered defendant's counterclaim, thereby putting defendant at an unfair disadvantage. Given

9

the fact that all of plaintiff's witnesses have failed or refused to answer any of defendant's Interrogatories, Requests for admissions, and requests for documentary evidence, and that defendant's counterclaim is the only discovery tool that she has any reasonable control over, the unfair disadvantage she faces without plaintiff's answer to the counterclaim, is very great.

### F.  Summary Judgment Evidence

In support of her response, defendant includes her affidavit 1040 tax returns for the years 1982, 1987, 1990, 1991 and 1992.

### H.  Conclusion

The evidence that plaintiff has proffered the court of an alleged tax liability, which is the basis of plaintiff's claims against defendant, is a faulty IRS administrative record which defendant has done her part to correct, which is evidenced by defendant's 1040 tax returns. The evidence that plaintiff has proffered the court regarding assessment and collection procedures is all based upon the same underlying IRS administrative record that was in error. Defendant has a right to administrative remedy, and to reasonable judicial due process and discovery whereby her counterclaim is answered. Also, plaintiff's motion, and entire case against defendant, specifically avoids the issues raised and the facts evidenced in defendant's counterclaim. For these reasons, defendant asks the court to deny plaintiff's motion for final summary judgment, and to allow defendant's counterclaim to be answered.


### Affidavit of Rose Charboneau

STATE OF FLORIDA
COUNTY OF MARION

On this day, Rose Charboneau appeared before me, the undersigned notary public. After I administered an oath to her, upon her oath, she said:

I, Rose Charboneau, of age and competent to testify, state as follows based on my own personal knowledge and under penalty of perjury:

1.    I am not in receipt of any authenticated document which verifies that I am engaged in a revenue taxable activity making me subject to and liable for a tax due and owing the United States Treasury.

2. I dispute that I owe the United States Treasury any sum due relative to any statutory obligation identifying a revenue taxable activity that I am engaged in.

3. I did not work for the federal government during any of the tax years 1982, 1987, 1990, 1991 and 1992.

4. I did not receive any federally connected compensation for my private sector activities during any of the tax years 1982, 1987, 1990, 1991 and 1992.

5. I am not a citizen or resident of the District of Columbia or its possessions, and have not elected to be treated as such.

6. I have received dozens of demands for unverified obligations from the IRS.

7. When I made telephone calls and wrote letters to the IRS demanding to know the legal and factual basis for these unverified obligations, the IRS always refused to answer my questions.

8. When I didn't accede to any of the demands of Van O'Neal, Dale Hart and Dave Quinn, they damaged my ability to obtain credit by publishing a "Notice of Federal Tax Lien" in the Marion County records.

9. As a direct result of the "Notice of Federal Tax Lien" published in the Marion County records, I have been unable to build a house on my real property, or otherwise improve the value of the property.

10. When I didn't accede to any of the demands of Van O'Neal, Dale Hart and David Quinn, they further damaged my credit by placing a "Levy" upon my property.

11. When I didn't accede to any of the demands of Van O'Neal, Dale Hart and David Quinn, they made a fraudulent transfer of title to my real property to the UNITED STATES OF AMERICA.

12. In May 2005 I learned specifically how and why the IRS administrative record pertaining to me was incorrect, and for the first time ever, learned how to administratively correct the errors.

13. On June 10, 2005 I filed 1040 tax returns for the tax years 1982, 1987, 1990, 1991 and 1992, with attached supporting documentation verifying that I did not receive any taxable income for any of these tax years.

14. Attached to this affidavit as Exhibit A are true and correct copies of the 1040 tax returns that I filed for the tax years 1982, 1987, 1990, 1991 and 1992.

_____
Rose Charboneau

## JURAT

STATE OF FLORIDA
COUNTY OF MARION

SWORN TO and SUBSCRIBED before me by Rose Charboneau on this 17th day of October 2005.

_____
Notary Public

SEAL



_____
Printed Notary Signature

### Verification of Rose Charboneau

STATE OF FLORIDA
COUNTY OF MARION

BEFORE ME personally appeared Rose Charboneau. After she identified herself in accordance with Florida law, I administered an oath to her, and upon her oath, she said:

I, Rose Charboneau, of age and competent to testify, state as follows under penalty of perjury:

I have read and understood the foregoing Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment; Affidavit with attached 1040 tax returns for the tax years 1982, 1987, 1990, 1991 and 1992, and each fact alleged therein is true and correct and within my personal knowledge.

_____
Rose Charboneau

SWORN TO and SUBSCRIBED before me on this 17th day of October 2005.

_____
Notary Public

SEAL

Notary Public State of Florida
Lynn Cardinale
My Commission DD430621
Expires 05/17/2009

_____
Printed Notary Signature

Prepared and submitted by: _____
Rose Charboneau

12

## Certificate of mailing

I hereby certify that on October 17th, 2005, I mailed a true and correct copy of the above and foregoing Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment, Affidavit, Exhibit A: 1040 tax returns for the tax years 1982, 1987, 1990, 1991 and 1992; and Verification to:

Richard D. Euliss
Trial Attorney, tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044

*Rose Charboneau*
Rose Charboneau
284 NW 117th Court
Ocala, Florida 34482