UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-                                        Case No.  5:04-cv-442-Oc-10GRJ

ROSE CHARBONEAU,

        Defendant.
_____

## **O R D E R**

This is an action by the United States of America, pursuant to 26 U.S.C. § 7401, to reduce to judgment the outstanding federal tax assessments made against Defendant Rose Charboneau for the tax years ending 1987, 1990, 1991, and 1992.  The United States also seeks an order directing the Defendant to vacate certain premises currently titled to the United States in satisfaction of the Defendant's tax liability for the 1982 tax year.  The United States previously filed a motion for summary judgment (Doc. 46), which the Court denied without prejudice based on the United States' failure to submit any proof concerning Notices of Deficiency allegedly sent to the Defendant (Doc. 59).  The Court granted the United States leave to file an amended motion for summary judgment to provide this missing proof, which the United States has now done (Doc. 63).  The Defendant, proceeding *pro se,* has filed a Memorandum in Opposition (Doc. 73), and the motion is now ripe for consideration.  Having considered the arguments of both parties, and

for the reasons set forth below, the United State's Amended Motion for Summary Judgment is due to be granted.

## Factual Background

Ms. Charboneau did not file any income tax returns for tax years 1987, 1990, 1991, and 1992. During those years, she worked as a beautician at various salons in Marion County. As a result, on October 17, 1994, the Internal Revenue Service ("IRS") assessed its tax liabilities against Ms. Charboneau for her unpaid federal income taxes, penalties, and interests for those years.[1] At the time the assessments were made, statutory liens arose in favor of the United States and attached to all of Ms. Charboneau's property rights, both real and personal. See 26 U.S.C. § § 6321, 6322.[2] On February 6, 1995, the IRS filed a Notice of Federal Tax Lien for the years at issue.[3]

Pursuant to these statutory liens, an agent from the IRS executed a Notice of Levy for Ms. Charboneau's real property located in Ocala, Florida on November 7, 1994. The Notice was sent to Ms. Charboneau via certified mail. A second Notice of Levy was sent

---

[1] See Certificates of Assessment, attached as Ex. 1 to United States' Amended Motion for Summary Judgment (Doc. 63). The IRS had previously made tax assessments against Ms. Charboneau for the 1982 tax year, which were satisfied by the sale of the land at issue in this case.

[2] See also Certificates of Assessment.

[3] See Ex. 2 to United States' Original Motion for Summary Judgment (Doc. 46). The United States has incorporated by reference all of the exhibits attached to its June 13, 2005 Motion for Summary Judgment.

to Ms. Charboneau via certified mail on January 3, 1995, and a third on June 29, 1995.[4] Each of these Notices informed Ms. Charboneau that if she did not satisfy her tax liabilities, a levy would issue against her property. Ms. Charboneau did not respond to these Notices and did not satisfy her tax liabilities. As a result, on August 14, 1995 and August 31, 1995, the IRS prepared Notices of Levy and Seizure of Ms. Charboneau's real property, located at 284 N.W. 117th Court, Ocala, Florida 34482.[5] The Notices of Seizure and Levy were issued for the tax years 1982, 1987, 1990, 1991 and 1992.

An IRS agent attempted to personally deliver the Notices of Seizure and Levy to Ms. Charboneau on September 1, 1995. Because she was not at her home, the agent left the Notices at her residence.[6] Ten days after leaving the Notices at Ms. Charboneau's home, the IRS agent mailed her a Notice of Sale, which informed Ms. Charboneau that the sale of her real property was to take place on Friday, September 29, 1995, at 2 p.m., at the IRS offices in Ocala, Florida.[7] The IRS advertised the sale in the Ocala Star Banner on September 17, 1995.[8] On September 26, 1995, Ms. Charboneau filed a Notice of Lis

---

[4] See Declaration of Dave Quinn, ¶¶ 2-4 and Exs. A-C to the Declaration, all attached as Ex. 3 to United States' Original Motion for Summary Judgment ("Quinn Declaration").

[5] Quinn Declaration, Exs. D, E.

[6] Quinn Declaration, ¶ 7. See also 26 U.S.C. § 6335(a).

[7] Quinn Declaration, ¶ 8, Ex. F. While the United States has not proffered any evidence demonstrating Ms. Charboneau's actual receipt of the Notice, it is clear that she was aware of the Notice, and of the sale, well before its scheduled date.

[8] Quinn Declaration, ¶ 9, Ex. G.

Pendens acknowledging the upcoming sale and seeking a cease and desist order against the same.[9]

The sale of Ms. Charboneau's property took place on September 29, 1995. Because the sale generated no third-party bids, the IRS declared the seized property sold to the United States in the amount of $14,915.70, and credited that amount towards payment of Ms. Charboneau's 1982 tax liability.[10] After the period of redemption lapsed, the Northern Florida District Director executed and recorded a Deed of Real Estate on April 10, 1996, transferring title of the real property to the United States.[11]

Since the sale, the United States has made repeated demands for Ms. Charboneau to vacate the property, but she has steadfastly refused to comply. Instead, Ms. Charboneau filed in the public records a Designation of Homestead on February 20, 1996, and on February 25, 1997 filed a Notice of Fraudulent Transfer.[12] The Defendant remains indebted to the United States in an amount exceeding $37,000.00, plus interest, which continues to accrue.[13]

---

[9] Quinn Declaration, ¶ 10, Ex. H.

[10] Quinn Declaration, ¶ 12. See also 26 U.S.C. § 6335(e)(C) (granting the IRS the authority to sell the property to the United States).

[11] Quinn Declaration, ¶ 13, Ex. I.

[12] See Exs. 4, 5 to United States' Motion for Summary Judgment.

[13] This amount represents Ms. Charboneau's tax liabilities for the years 1987, 1990, 1991, and 1992. The 1982 tax assessment was satisfied with the proceeds from the sale of Ms. Charboneau's real property.

**Procedural History**

The United States initiated this action on October 4, 2004, through the filing of a complaint seeking to reduce its tax assessments to a judgment against Ms. Charboneau in the amount of $37,952.10 plus interest (Doc. 1). The United States amended its complaint on January 7, 2005 (Doc. 8) to include a second count seeking an order directing Ms. Charboneau to vacate the real property located at 284 N.W. 117th Court, Ocala, Florida, which is now owned by the United States, in partial satisfaction of her tax liabilities. The United States also seeks an order adjudicating that it is the full and rightful owner of the real property, free from any encumbrances, and that a judgment be entered against Ms. Charboneau for the reasonable rental value of the property, based on her continued occupation and use of the property since April 1996.

Ms. Charboneau filed a counter-claim pursuant to 26 U.S.C. § 7433 for damages allegedly caused by the actions of an agent of the IRS (Doc. 3), and moved to dismiss the United States' Complaint (Doc. 11). The Court dismissed the counterclaim and denied the motion to dismiss on February 7, 2005 (Doc. 20). Since that time, Ms. Charboneau has filed numerous other motions to dismiss (Docs. 23, 25, 32, 35), as well as requested leave to further amend her answer, (Doc. 68), none of which had any merit, and all of which were denied (Docs. 31, 45, 74). At this stage in the litigation, Ms. Charboneau has no counterclaims against the United States.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## Discussion

A.  Defendant's Tax Assessments.

The United States first requests that the Court reduce to a judgment the tax assessments against Ms. Charboneau for the tax years 1987, 1990, 1991, and 1992. A tax assessment is an administrative determination by the IRS of a tax liability, and it is the first necessary step towards attempting to collect on that liability. See 26 U.S.C. § 6213(a).

The purpose of an assessment is "to insure that a proper record is kept in order to avoid slipshod tax accounting practices and to insure that taxpayers may receive a summary of tax records pertaining to their tax liability." Gentry v. United States, 962 F.2d 555, 556 (5th Cir. 1992).

The IRS effectuates a tax assessment by following certain recording procedures, which are set forth in 26 U.S.C. § 6203 of the Internal Revenue Code and 26 C.F.R. § 301.6203-1.  Together, these provisions state that an assessment "shall be made by an assessment officer signing the summary record of assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment." 26 C.F.R. § 301.6203-1.  The regulations further provide that if a taxpayer requests a copy of the record of assessment, the taxpayer "shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." Id.

In practice, the IRS complies with these procedures by having an assessment officer fill out and sign the "summary record of assessment," also known as a Form 23C.  In its Amended Motion for Summary Judgment, the United States has submitted copies of its "Certificate of Assessments, Payments, and Other Specified Matters" for each of the tax

years at issue.[14] These Certificates of Assessment, which are also known as an IRS "Form 4340," are signed and certified by an officer of the IRS. They identify Ms. Charboneau by name and social security number, specify that the tax liability pertains to a "Form 1040" - *i.e.* federal income tax payments, identify each tax year for which a liability has been assessed, and provide the date and amount of each assessment, payment, credit, penalty and accrued interest.[15] In other words, these Certificates of Assessment satisfy the requirements of both 26 U.S.C. § 6203 and 26 C.F.R. § 301.6203-1 and demonstrate that proper notice was sent and demand for payment was made.[16]

Once the United States has established that its assessments are valid through the submission of Certificates of Assessment, the burden then shifts to the taxpayer to show that the government's assessments were arbitrary or incorrect. Bar L Ranch, Inc. v. Phinney, 426 F.2d 995, 999 (5th Cir. 1970). If the taxpayer does not present evidence establishing the contrary, the Court may properly rely on the Certificates of Assessment and conclude that valid assessments were made. Guthrie v. Sawyer, 970 F.2d 733, 737-38 (10th Cir. 1992) (internal citations omitted).

In her response in opposition, Ms. Charboneau appears to have abandoned her earlier challenges to the validity of the Certificates of Assessment, and whether she

---

[14] See Certificates of Assessment, Ex. 1 to United States' Amended Motion for Summary Judgment.

[15] Id.

[16] See also United States v. Chila, 871 F.2d 1015 (11th Cir. 1989) (noting that a Certificate of Assessment is presumptive proof of a valid assessment).

received any of the various Notices or other documentation sent by the IRS.  Instead, she limits her argument to a hackneyed attack on the nature of the Internal Revenue Code itself and the IRS's assessments and liens against her for unpaid tax liability.  In short, Ms. Charboneau contends that the Code's definitions of "wage income" and "self employment income" only include income derived from individuals who work for the federal government, or whose work involves that of "the performance of the functions of a public office."  Because Ms. Charboneau never worked for any federal or state government during the tax years in question, she claims that the IRS cannot make any tax assessments against her.

This nonsensical argument is belied by the plain language of the Internal Revenue Code itself.  For example, 26 U.S.C. § 3401 defines wages as "<u>all remuneration</u> (other than fees paid to a public official) for services performed <u>by an employee for his employer</u> . . . ." 26 U.S.C. § 3401(a) (emphasis added).  The statute then goes on to define various exceptions to this broad definition of wages in certain categories of <u>private</u> employment, such as in the agricultural and domestic service fields,[17] newspaper delivery,[18] the clergy,[19] and for wages incurred by individuals working for employers "other than the United States

---

[17] <u>See</u> 26 U.S.C. § 3401(a)(2), (3).

[18] <u>See</u> 26 U.S.C. § 3401(a)(10)(A).

[19] <u>See</u> 26 U.S.C. § 3401(a)(9).

or an agency therof" within Puerto Rico or a possession of the United States.[20]  There is nothing in the statute limiting "wages" to solely publicly-derived income.[21]

Ms. Charboneau, however, focuses on § 3401(c), which states that:

> the term "employee" includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing.  The term "employee" also includes an officer of a corporation.

26 U.S.C. § 3401(c).  Setting aside the last sentence of this provision, which clearly states that officers of private corporations are considered employees for purposes of determining wages, it is obvious that within the context of this statute that the word "includes" is a term of enlargement, not of limitation, and the reference to certain public officers and employees was not intended to exclude all others.  See also Sims v. United States, 359 U.S. 108, 112-13 (1959) (finding that similar provision in 26 U.S.C. § 6331 dealing with levies on salaries and wages does not exclude wages of private citizens); Sullivan v. United States, 788 F.2d 813, 815 ("[Section 3401(c)] does not purport to limit withholding to persons listed therein"); United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) (the Internal Revenue Code definition of "employee" in 26 U.S.C. § 3401 does not exclude privately employed wage earners); .  In addition, 26 U.S.C. § 7701, which provides the definitions of terms used throughout the Internal Revenue Code, states that the "terms 'includes' and 'including'

---

[20] See 26 U.S.C. § 3401(a)(8)(A)-(D).

[21] See also Wolfe v. United States, 570 F.2d 278 (8th Cir. 1978) (finding that beauticians are "employees" for purposes of § 3401).

when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." 26 U.S.C. § 7701(c).

Ms. Charboneau also attempts to evade her tax liabilities by arguing that the definition of "self-employment income" excludes all but governmental income. Again, a plain reading of the relevant statutes belies this argument.  Section 1402 defines self-employment income as "the net earnings from self-employment derived by an individual . . . during any taxable year. . . ," and defines "net earnings from self-employment" in relevant part as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business . . . ." 26 U.S.C. § 1402(a), (b).  Ms. Charboneau relies on the definition of "trade or business" set forth in 26 U.S.C. § 7701(a)(26) which "includes the performance of the functions of a public office."  Again, Ms. Charboneau misses the boat - clearly this definition of "trade or business" is intended to expand its reach to include public office, it does not exclude private business operations.  In addition, Ms. Charboneau ignores § 7701(c), which states that the word "includes" does not operate to exclude all other things.

Finally, Ms. Charboneau turns to the definition of "person" in 26 U.S.C. § 6041A (the provision concerning income tax returns for services and direct sales), which states that "person" includes any governmental unit."  26 U.S.C. § 6041A(d)(1).  This reading completely misinterprets that section, which, as with the other definitions Ms. Charboneau mistakenly relies on, simply expand the definitions to include governmental employees and

11

agencies - they do not exclude private wage earners.  Moreover, § 7701 defines "person" "to mean and include an individual . . . ."  26 U.S.C. § 7701(a)(1).  And even if that definition did not exist, § 7701(c) would put to rest any of Ms. Charboneau's arguments.  Ms. Charboneau's deliberate refusal to accept the clear and plain language of the Internal Revenue Code will not defeat the United States' request for summary judgment.[22]

Ms. Charboneau also has attempted to contest the United States' assessments against her by filing frivolous and false income tax returns for the tax years in question.  Each of these tax returns, which simply list a "0" under every single category for wages, income and/or tax liability, are an obvious - and unsuccessful - attempt to evade Ms. Charboneau's federal income tax responsibilities.  They do not refute any of the evidence submitted by the United States which establish valid tax assessments against Ms. Charboneau for the tax years 1987, 1990, 1991, and 1992 and therefore are of no merit.

Finally, Ms. Charboneau raised several procedural challenges to these assessments in her answer to the United States' Amended Complaint[23] (Doc. 21).  Even though it

---

[22] Ms. Charboneau also mentions in her response her counterclaim to quiet the title on her Ocala property.  This counterclaim does not exist; the United States Magistrate Judge entered an Order denying Ms. Charboneau's attempt to amend her answer to include this counterclaim,(Doc. 74).  Therefore, any arguments by Ms. Charboneau on this issue, including any arguments that she did not receive any discovery on this issue from the United States are not relevant to this case and shall not be considered.  Moreover, even if Ms. Charboneau had somehow raised a claim under 28 U.S.C. § 2410 to quiet title, it would fail as she has alleged no grounds that the liens or levies upon her property were procedurally or substantively invalid.

[23] When ruling on a motion for summary judgment, the Court must consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."
(continued...)

appears that Ms. Charboneau has now abandoned these challenges, given that she is proceeding *pro se*, the Court will consider them. The majority of these challenges were dealt with in the Court's September 26, 2005 Order, (Doc. 59), and are refuted by the Certificates of Assessment filed by the United States, and therefore need not be addressed here again. In addition, the United States has cured the one deficiency from its prior attempt at summary judgment - the lack of proof that it ever sent Ms. Charboneau a Notice of Deficiency for each tax year - by submitting the Certificates of Assessment, copies of the actual Notices sent to Ms. Charboneau, and the IRS's internal mailing log demonstrating that the Notices were sent on April 21, 1994. See United States v. Dixon, 672 F. Supp. 503, 506 (M.D. Ala. 1987), aff'd, 849 F.2d 1478 (11th Cir. 1988) (proof of mailing Notice of Deficiency can be demonstrated by providing Certificate of Assessment, which indicates the date the Notice was sent, or some other documentary evidence demonstrating mailing).[24]

---

[23](...continued)
Fed. R. Civ. P. 56(c); Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[24] See also, Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1991) ("The Certificates of Assessments and Payments, which listed 'First Notice' dates for each assessment, also constituted presumptive proof that the IRS gave notice of the assessments and made demands for payment"); Bassett v. United States, 782 F.Supp. 113, 117 (M.D. Ga. 1992 ) (finding that certificates of assessment are presumptive proof that assessments are valid, even without copy of Notice of Deficiency where certificates provide dates that first and second notices were issued); United States v. Rempel, 202 F.Supp. 2d 1051 (D. Alaska 2001) (Form 4340 certificates of tax assessment are official documents which establish that assessments were made and that assessments made were valid, and when same certificates indicate that Internal Revenue Service (IRS) sent taxpayers notice of assessment and demand for payment on certain date, certificates
(continued...)

Given that the United States has submitted all required documentation to establish that its assessments against Ms. Charboneau are valid and enforceable, and given that Ms. Charboneau has failed to raise present any evidence that the assessments were arbitrary or incorrect, the Court finds that the tax assessments against Ms. Charboneau for the tax years 1987, 1990, 1991 and 1992 are valid and enforceable, and that the United States is entitled to a judgment for the outstanding tax assessments against Ms. Charboneau for those tax years.

B.      The Seizure of the Ocala Property.

In addition to seeking entry of judgment on its tax assessments, the United States also seeks an order from the Court directing Ms. Charboneau to vacate the property located at 284 N.W. 117th Court, Ocala, Florida 34482.  The United States contends that it became the free and rightful owner of the property on April 10, 1996, the date the Northern Florida District Director executed and recorded the Deed of Real Estate.  The Court agrees.

Section 6331 of the Internal Revenue Code grants the IRS the authority to levy and seize the property of an person who refuses to pay his or her taxes. See 26 U.S.C. § 6331(a), (b); see also G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977).  The United States has submitted its Certificate of Assessment for the tax year 1982 for Ms. Charboneau, which, as discussed above, is presumptive proof that its assessment against

---

[24](...continued)
also establish that notice was indeed sent).

Ms. Charboneau for that year is valid and enforceable, and that it sent all necessary notices to Ms. Charboneau in advance of its levy and seizure of the property. In addition, Ms. Charboneau has made no argument and presented no facts that the notices sent to her were deficient in any manner, or that the sale of her property violated any applicable laws. Rather, she continues to allege that she has a claim to quiet title, and that she is not subject to the Internal Revenue Code. Both of these arguments have been addressed earlier in this Order and are without merit.

Accordingly, the Court sees no reason why the levy and seizure of the Ocala property by the United States, and the subsequent sale of the Ocala property to the United States is not valid and enforceable. The United States amended motion for summary judgment seeking a declaration that it is the owner of the Ocala property, and directing Ms. Charboneau to immediately vacate the premises is due to be granted. The Court notes that this dispute has continued for almost twelve years and that the United States has owned the subject real estate for over ten years. This suit has been pending for two years and has constituted a significant imposition on the resources of the Court in dealing with Ms. Charboneau's utterly frivolous arguments. Enough is enough, and it is the Court's intention to end this judicial controversy here and now.

C.     Request for Fair Rental Value.

In its First Amended Complaint, the United States has also asked for judgment against Ms. Charboneau in the amount of the reasonable rental value of the Ocala property from April 10, 1996 - the date the United States became the owner of the property - to the

present.  The United States appears to have dropped this request, as it has made no argument and presented no evidence in support of this claim in either its original motion for summary judgment or its amended motion for summary judgment.  Given the absence of any argument or evidence on this issue, the Court deems the claim to have been abandoned and no relief will be granted relating to rent.

D.     Ms. Charboneau's Motions.

In addition to her opposition papers, Ms. Charboneau has filed several motions challenging the evidence submitted by the United States.  The first, entitled "Judicial Notice of Counterfeit Securities" (Doc. 75), is simply a rehash of her prior arguments challenging the authenticity of the various documents submitted by the United States in support of summary judgment.  The Court has addressed each of these arguments in its September 26, 2005 Order (Doc. 59), and will not revisit them.  To the extent that Ms. Charboneau prefaces her challenges to these documents on the grounds that they do not prove that she was engaged in any taxable activity, that argument has been addressed and rejected above - the Internal Revenue Code and its tax liability provisions apply to Ms. Charboneau.  Ms. Charboneau also challenges the authenticity of the United States' First Amended Complaint and Amended Motion for Summary Judgment.  The Court does not understand these arguments, and rejects them.  The United States Attorney responsible for this case has signed these papers, and they are in compliance with Fed.R.Civ.P. 11.

Next, Ms. Charboneau has filed two motions (Docs. 87, 88) seeking reconsideration of the Magistrate Judge's December 27, 2005 Order (Doc. 84) denying Ms. Charboneau's

request to erase the tax assessments and levies against her.  Ms. Charboneau based her request on the incredulous argument that her recent filing of obviously false and fraudulent income tax returns for the tax years at issue somehow automatically relieves her of her tax liability.  Ms. Charboneau is wrong, and her motions for reconsideration are due to be denied.

## CONCLUSION

Accordingly, for the reasons set forth above it is hereby ORDERED that:

1.      The United States' Amended Motion for Summary Judgment (Doc.  63) is GRANTED. The Court ADJUDGES and DECREES that the Defendant, Rose Charboneau, is indebted to the United States in the amount of $37,952.10 as of September 16, 2004, with interest accruing as allowed by law thereafter.  The Clerk is directed enter a money judgment accordingly.

2.      The Court further ADJUDGES and DECREES that the United States is the full and rightful owner of an unemcumbered fee simple estate in the property located at 284 N.W. 117th Court, Ocala, Florida 34482, and that the Defendant, Rose Charboneau has no interest in this property.  The Clerk is directed to enter a final declaratory judgment to that effect.

3.      The Defendant, Rose Charboneau is ORDERED to vacate the property located at 284 NW 117th Court, Ocala, Florida 34482 within twenty (20) days from the date of this Order, failing which the United States Marshal, on application by the United States,

shall forthwith take all steps reasonably necessary to physically evict and permanently remove the Defendant, Rose Charboneau, and anyone acting in concert with her, from such premises, and shall install and maintain the United States or its assignee(s) in peaceable possession of such premises.  The Clerk is directed to enter a final judgment to that effect.

4.     The Defendant's "Judicial Notice of Counterfeit Securities, Motion to Strike, and Objections" (Doc.  75) is DENIED; and

5.     The Defendant's Motions for Reconsideration, styled as a "Corrected Objections to Order" (Docs.  87, 88) are DENIED.

6.     After entering the judgments directed by this Order, the Clerk shall terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 18th day of July, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Rose Charboneau, *pro se*
             Maurya McSheehy